Good morning, Your Honors. May it please the Court, A. Dean Momo from Stinson LLP, on behalf of Appellants Eric Sorenson and Melanie Forner. We are requesting that this Court reverse a district court's dismissal of the appellant's claims in their entirety with prejudice and remand the case for further proceedings, including trial on the merits. We have presented four issues on appeal, but for purposes of my argument, I would like to focus on two, standing and the dismissal with prejudice. For the first, we have an issue of first impression, an agent who was given a power under the power of attorney. She abused that power, and why shouldn't she be accountable to the ones she owes the duty to? The question here is, are you going to leave Eric and Melanie, who clearly have an interest in the C.D.'s funds, without any remedy at all? The district... A. Dean Momo Well, she offered to pay them the money, and they wouldn't take it, as I understand it. She offered to pay them the $108,000. Jodi Slick Your Honor, the... Eric and Melanie are bringing forth claims of civil fraud and civil theft. As a simple analogy, if someone steals a bracelet from a store and then brings the bracelet back, are they still not fraud? Jodi Slick Wait. Jodi Slick I think proving loss and damage is essential to a civil claim. Jodi Slick It is, Your Honor. Jodi Slick Your hypothetical, there may be a prosecutable offense remaining after the victim is made whole. That isn't saying that there's a civil theft claim. Jodi Slick Your Honor, we also have the issue of civil fraud based on the statements, the misrepresentations that the appellee, Joanne, had made to Eric Sorensen with respect to the existence. Eric Sorensen See, that has nothing to do with the power of attorney. I frankly think the power of attorney is a misfocus in this case. Jodi Slick Your Honor, the power of attorney and the C.D.'s themselves need to be looked at together. Just taking a step back... Eric Sorensen Wait, the power of attorney, everything that she did is consistent with the power of attorney. If her explanation, I did it to get the money where it didn't get in the way of further care for David, if that's true, there was no violation of the power of attorney. The power of attorney is when she kept the money after David died, right? Jodi Slick That is incorrect, Your Honor. That is our position. Eric Sorensen Wait, wait. That's incorrect? Why is it incorrect? No, you're wrong. It's not our position. Well, tell me why it's wrong. Jodi Slick If I may, Your Honor, what you're arguing, what you're stating is similar to what the district court did below. The district court performed a four-corner analysis of the power of attorney, which... Eric Sorensen That's not answering the question. Jodi Slick I'm getting there, Your Honor. Our position is that that's not the starting point and certainly isn't the ending point. There is no authority, certainly not in the unpublished decision, Auburn Manor, or any case that says when you're determining third-party beneficiary status, that you look solely to the four corners of the agreement, the POA. You also need to look specifically at the CD. So from a practical... a suit for breaching a POA because you didn't act, the POA required action consistent with the principle. Jodi Slick Correct, Your Honor. Eric Sorensen And the action taken appears to be not inconsistent. And so you're saying you can't look at anything other than the four corners? Come on. Jodi Slick Well, we say that the actions that Joanne, as the power of attorney took, were inconsistent with the decedent's intent. Eric Sorensen What before refusing to turn over the money? What was inconsistent with either the face or the stated or intent? Jodi Slick So, Your Honor, and we have to be very careful because in this case, this has a really unique procedural posture and that it was dismissed with the motion to dismiss. Eric Sorensen We'll get there. Jodi Slick So, looking at the facts in the first amended complaint, and we have to accept them as true for purposes of the appeal, Eric and Melanie allege at various points in their first amended complaint that, looking at paragraph 10, for example, their father, David, invested and funded two certificates of deposit that were intended to be for the express benefit of and use by his natural children after his death. Eric, Melanie... Jodi Slick No, I'm not, Your Honor. Eric Sorensen You told me I can't go outside them with my questions. Jodi Slick Your Honor, I'm not, actually. I'm referring to the CD. The power of attorney, which I'm holding up here, which was in the record at EC... Eric Sorensen The power of attorney gave her the power to be a co-owner of the CDs. Jodi Slick Your Honor, when you're looking at the power of attorney and the powers that are designated therein... Eric Sorensen Is that wrong or not? Don't keep changing... Jodi Slick If you're saying the power of attorney did not authorize... David did not authorize the defendant to become a co-owner of the CDs. Jodi Slick He allowed for that. What he didn't allow for, as Eric and Melanie allege, he didn't allow for Joanne to take the money that was from his own family's history to then take those funds away from his own biological children and put those funds into her own personal account so his children had no access to them. Eric Sorensen You're just making my point. She did have the ability to take the funds and move them where they could because they were getting in the way of getting other assistance, third party assistance. Jodi Slick No, Your Honor. If I may... Eric Sorensen No, what? Jodi Slick If I may... Eric Sorensen Wrong factually or wrong... Jodi Slick Factually and legally, if I may. Minnesota statute section 523.21 states, in exercising any power conferred by the power of attorney, the attorney in fact shall exercise the power in the same manner as an ordinarily prudent person of discretion and intelligence would exercise in the management of the person's own affairs and shall have the interests of the principal utmost in mind. And her explanation of why she did it does not violate that. Jodi Slick But, Your Honor, that's a question of fact. That's a question of fact. Eric Sorensen But it's not, you know... Jodi Slick That's a question of fact and that's why we're here, Your Honor. Eric Sorensen Wait a minute. What remedy does that get you? Jodi Slick A fair trial, Your Honor. Eric Sorensen Of what claim? You see, the whole problem here is that when they were pro se, they asserted their own claims. Jodi Slick Yes. Eric Sorensen And you came in and said there were better claims here and I plan to move to leave to amend. And then you did not comply with District of Minnesota rules that say if you're going to do that, you've got to make the motion and you've got to submit your amended complaint. Jodi Slick I... Eric Sorensen You said I'm going to do this and you didn't. I'd say you. I don't mean you. This is the record we have. There's a representation that that would be done. It was not done. And our cases are, we have many cases that say then you're stuck with the uphill battle of a post-judgment motion for leave to amend. That, to me, is the way I see this case. Because conversion and unjust enrichment were, I think, the tenable claims here. Not civil theft, not fraud. Jodi Slick Yeah, I... Eric Sorensen Conversion, you can call conversion constructive fraud. They're almost two peas in a pod often. But the right claims weren't presented. So now what do we do with the case? Jodi Slick Your Honor, I respectfully disagree. Still sticking with the issue of standing. I stepped into this case as pro bono counsel to avoid an injustice. Eric and Melanie, when they were pro se, did their very best without counsel to bring this action and to plead their claims. And when I came in and my firm came in, we briefed in opposition to the appellee Joanne's to dismiss, and we awaited oral argument. The district court said, not a chance. When we got involved, Your Honor, contrary to what you had stated, we did not attempt to amend the complaint. Melanie and Eric had already amended the complaint. Eric I just had a representation that wasn't made. Jodi Slick Your Honor, if you look at the docket and the record that we have designated in this case, Eric and Melanie had already amended their complaint. So in our papers, we refer to it as the FAC. That is the First Amended Complaint. They had amended the complaint. In that very document, they asserted claims of civil fraud and civil theft. Now, there may be an issue as to how they — Eric You know what I'm referring to in the record? Jodi Slick Excuse me? Eric You know what I'm referring to, the representation that we intend to amend? Jodi Slick Yes, Your Honor. Eric Well, what's a — just — all right. Jodi Slick Sure. Eric When was that made? Is it in a transcript? I read it. Jodi Slick You're right, Your Honor. Eric So why do you run away from that? Jodi Slick Because that representation was made in the briefs, both in the motion to dismiss stage and also on appeal, but not with respect to — as advocates, we have the ability, once we represent clients, if we're given an opportunity to look at the case again and to assert any claims where there's good faith basis. But aside from that, if the court were to have dismissed the lawsuit without prejudice, then me stepping in as counsel, I would have looked at the complaint and I would have made it easier and clearer, perhaps, to identify the claims that Melanie and Eric were asserting. For the simple fact that if you look at the first amended complaint, which is in the record, there's various language that's crossed out, language that actually is particular to the claims that are at issue here, civil fraud and civil theft. It can be streamlined. It can be made clear for the parties as well as for the benefit of the court. And that's all that I was representing to the court that we would do if given the opportunity to do so. Aside from the fact that we could add claims, there really is no need. The claims that were pled, they have standing to do so. And if I could just, I'm about to get into my rebuttal time, but if I can just speak quickly with respect to the power of attorney itself and then turn to the certificate of deposit. The power of attorney as a form, as a document, you don't see beneficiary designations attached to that document. The document is simply a form and people use it to go to other parties to show that they have particular powers that they have to follow. But when you look at the duties and who are those duties owed to if they're not followed, in this particular instance, which is a matter of first impression, you go to the certificate of deposit. And again, it's a question of fact, but Melanie and Eric allege in their First Amendment complaint that their father had designated them as beneficiaries to his CD. The district court could have looked to secondary authority. It could have also looked at persuasive authority in Pennsylvania in the Relic case that would have allowed them to decide and to predict how would a Supreme Court in Minnesota have decided this case if the matter was before them. And had they done that, they would have seen that by the fact that the father had designated Eric and Melanie as beneficiaries to the certificate of deposit, which they allege, and we have to assume that that is true, that gives them standing. The court in Relic found it. The secondary authority, the restatement of trust, as well as Scott as trust, suggests the same. Your Honor, I see that I'm cutting further into my rebuttal time. I would like to reserve the balance of my time for that, if I may. Thank you. Mr. Atmore. Morning, Your Honors. May it please the Court, Tom Atmore on behalf of the appellee, Joanne Sorenson. Coming into this case after the dismissal was ordered and looking at what the district court did is very impressive because it cut through all the chaff and got to the heart of the matter. This was a very difficult First Amendment complaint to read through. There were a number of exhibits submitted by both sides, and the court took great pains to get at the main core of the First Amendment complaint, look at it favorably for the plaintiffs, and give them every reasonable inference, and still came to the right result, which is this case can't proceed. And the simple reason is that when you have a power of attorney and it gives the attorney, in fact, the right to transfer funds to herself, and it does not have any statement that there is a third party beneficiary who has to be dealt with, that ends the case. And it doesn't matter what happens with the certificate of deposit because if you give the person who has the power of attorney the right to put their name on that certificate of deposit, that ends the case. In your view, do we have to reach the question of standing? Well, no, I think there's a failure to state a claim. I think the analysis is kind of the same between the two, and I think the district court went both ways for that reason, and that is there is a failure to state a claim because the POA gave her the right to do what she did. There's also a standing issue because they are not third party beneficiaries under the power of attorney, and so the person that the people that would have had the claim were the estate of David Sorenson. So that standing, yes, and it's also a failure to state a claim. You can go either way, either way. So if a power of attorney makes you a fiduciary, and if acting as a fiduciary to David she acted contrary to his intent, you say it's crystal clear there's no standing of a third party beneficiary who's victimized by that to sue? I don't think Minnesota law has gone there. Actually, I think if you read the Auburn Manor case and the way it analyzed it, Minnesota law does go there, and the reason is in that case, that power of attorney expressly stated that attorney, in fact, you're going to use my funds to pay for my medical care and my treatment. A third party can recover as a beneficiary of a contract if he can show that the promisor intended to benefit under the contract. Quote, unquote, from Auburn Manor. That's correct. Here they cannot. That's just what I said. Here they cannot do that because unlike the. Okay, you're talking facts. I was addressing your standing argument. Right. Auburn Manor does not eliminate if the right claim is pleaded. Well, if the right claim were pleaded, perhaps. Now, civil theft is a whole other question. Right, right. And fraud may or may not be a whole other question. Fraud might be actionable, but it probably isn't on the face of the power of attorney. No, and it's not as pleaded. If she, consistent with the power of attorney, made herself co-owner and then withdrew the money, she did that to make them, to make, to come to his assistance with his terminal illnesses by making other benefits available. Right. That's not inconsistent. No, it's not. But if she then keeps the money after he dies. I don't think that. Arguably, we're beyond the power of attorney. But if we're not beyond the power of attorney, then she has acted inconsistent with his other intent, which was to leave something for these kids. She's victimized them. Well. And you're saying Auburn does not say in that situation they don't have a cause of action. It doesn't go that far. Which is why I said, do we have to reach that question? Well, and as I say. You had to come back to it. Yes, but here's the problem with the analysis, with all due respect. If the power of attorney gives her the right to put herself on the certificate of deposit, then the fact that they are beneficiaries under that certificate of deposit is irrelevant. No, but his intent is not irrelevant under the statute that's been read to us this morning. But the evidence of his intent is that he gave her the right to transfer his funds to her. You know, there's four corners. That's just nonsense. In these cases, you go, what's the subjective intent? And yes, you may have to have a trial on that. You might. But under the case law, it's the power of attorney you look at. What did the power of attorney do? That's why I said at the start of this. I think the power of attorney is a misfocus in this case. And all our argument is doing is convincing me even more of that. The power of attorney is what they're alleging. That's where the breach is. That's where your client's fiduciary duty arises. And that's where they're alleging the breach occurred. That she used the power of attorney to put her name on the contract for deed. That's what their allegation is. That's why we're addressing it. That's focusing the claim around the power of attorney. But the power of attorney can put you in a position to breach the fiduciary duty it reflects in other ways. It could. It could. But their allegation is that the power of attorney is what she used to change the result. Their supposedly promised inheritance. Which, by the way, is just a mere allegation in the complaint. And I understand we're dealing with their allegations. They're allegations of admissions by those speaking for your client and your client. And I will note also in response to Judge Malloy that in fact she did pay them. Oh, I know. She paid her $4,000. Right. Not both CDs. Well, there's an issue as whether they're both two CDs. But yes. I thought we had a banker who said she closed it out three days after Eric inquired about it. No, that's not what the banker said. OK, so we'll give them a trial on that. Anchor Bank said there was no CD. Southtown. I think it's Southtown. Where do you, where? That was a, as part of the record, there's a letter from Anchor Bank saying there was no CD in 2015, 2016. The CD they're claiming at Anchor Bank never existed. Then what was the banker talking about? I don't recall. Who said she closed it out? That was Eric Sorensen relating what a banker, he said a banker told him. There's no, that never happened. Well, all you're doing is convincing me that it's the reverse with all of this fact stuff. That's why I'm focusing on the power of attorney and the language in it. That's their claim is the power of attorney. It's not a factual based claim. They don't have third party beneficiary status to make the claim. But wait a minute, the claims are fraud and civil theft. Right. Based on the power of attorney. Well, based on, that doesn't matter. You base, you know, you go into a suit when you file a complaint and you base it on what you've got then. And then we have some discovery and it winds up to, you know, it morphs as every case does. They have no actual misrepresentation claim. She told them the truth, why she made, why she put herself on the CD. After David Sorensen died, she started paying them on the CD. And almost all of it was paid over to them. Now we're in the facts. Well, no, we're in the allegations. We know what to do with facts. We're in the allegations and why the allegations don't state a claim. That's what I'm talking about. They don't state a claim. There's no, they didn't rely on anything. I don't think Iqbal takes much to plead a fraud. Well, you have to plead fraud with specificity and they did not. And they did not. And so what we're taking is the most favorable view possible of this First Amendment complaint. And we're saying, look, they don't have a claim. They alleged she got the money for one stated purpose and then used it for another. That's, she got somewhere between unintentional misrepresentation and common law fraud. The claim to misrepresentation is her explanation of the reason why she put the CD in her name as well. Yes. I guess I have two questions. One is I'm a little puzzled and I don't know if you have an answer to this, why there's even this dispute about whether there's a second CD. Why can't that just be resolved? I mean, they're either, there is or there isn't. I mean, I don't understand why they're, your claim is there's just one CD, it's worth about $150,000, right? $108,000. And most of it has already been paid over to the plaintiffs. Okay. And you say there is no second CD. So why can't that just be resolved pretty simply? By finding out? Yeah. Well, I think it was. The problem is that we're here on a motion to dismiss. And so we're going with what the allegations are. But if you look at the history of the case, they went to mediation. I think these issues were, in fact, sorted out. And there is no CD too. Then the second question I have is I, and this probably is more directed to the appellant than you. I have some real problem with the assignment in this case and the reservations as to whether or not that really creates diversity jurisdiction. What's your view about that assignment? Yes. And so we argued, Your Honor, that that was a collusive assignment. Well, let's assume it's collusive. Yeah. But what I'm more concerned about is the things he reserved. Right. Especially the claims against your client's estate. Right. And really what that is, he's reserving his right to go after the very same thing that these plaintiffs are going after here. And that is, if they don't recover here on these claims CDs, they'll belong to, theoretically, Joanne. And Joanne can do with them as she will under her estate, give them to heirs. And that's exactly what Paul is reserving. He's not assigning those claims. And what it is, is the, I don't know, 20th bite at the apple. That's what they're doing. They tried to sue in small claims court in California. That didn't work. Now they're bringing a new claim here, same issues, same dollar, same CDs. And if they don't win here, they're going to leave. Paul's going to save it for them at the end of the day. That's what that's all about. And that's why we think it's collusive. They're going to what? If they don't win in this case, Paul has reserved for himself the third, fourth bite at the apple. That's what that assignment is doing. It is not a flat-out assignment, unreserved assignment of the claims. He's keeping them for himself in case this case doesn't go the way they want. Well, counsel, I mean, the district court didn't make any findings on that, though, right? I mean, that's your position. But isn't that a fairly complex analysis that the district court has to perform in order to reach that conclusion? It is a somewhat complex analysis under the cases. And I think the airline or airline recovery case that we cite goes through the steps. But I think, I don't think it's a real, I think this court has everything it needs to do the same analysis. There's not going to be any additional factual development. The fact of the matter is that on the face of this assignment, with the cover, with the signing letter, you see all that you need to see. And then you can make the analysis set forth in the airline recovery case. And that is, namely, were all the assigned claims actually assigned? Was anything reserved? When was this done? It was done in response to a challenge to jurisdiction. So that's, that makes it presumptively collusive. And the consideration seems to be lacking in this one. So I think this court has everything it needs to do the analysis. And I see my time is up. And unless there are more questions, we ask that you affirm. Thank you. Thank you. Yes, Your Honors. If I could respond to the last question about the assignment. There are a couple issues here. The district court properly concluded that, assuming that at the time this lawsuit was initiated, Paul Sorensen was an indispensable party. He no longer is an indispensable party, and diversity jurisdiction now exists. That was on page 13 of the Memorandum of Law and Order. With respect to, let's assume that that was incorrect, was there an assignment that was manufactured? Even if that's the case, that's a question of fact. That's an analysis that has to be applied under 28 U.S.C. 1359. And if you look at the very case that Apelli relies upon airlines reporting from the Second Circuit in 1995, the court said in that case that there are certain kinds of diversity creating assignments that weren't particularly close attention. In other words, there are assignments that are presumptively conclusive. He said that this is an example of one of those assignments. It's not. The court said parent subsidiary assignments and assignments between parent and subsidiary companies. We're dealing with individuals. The presumption doesn't apply here. And even looking at the facts of that case, that case is distinguishable. Initially, there was a motion to dismiss. An assignment of claims occurred by the plaintiff after the motion to dismiss was filed. The court then looked at the diversity among the parties on both sides and decided based on the assignment at that time that there was diversity of jurisdiction. After that, the parties engaged in discovery, which did not happen here. And after the parties engaged in discovery, the defendant found facts supporting a basis to renew the motion to dismiss on there being a lack of diversity jurisdiction. And it was only then that the court found below in the Second Circuit that there was a manufactured diversity of jurisdiction, which ultimately was affirmed by the Second Circuit. We don't have those facts here. Again, this case didn't even get any sort of discovery. So to the extent Paul and what Paul wrote in his letter and what he meant by that, and, of course, he wasn't represented when he wrote the assignment of claims, whatever those terms mean, those are all questions of facts. And what's your position today on this issue? Our position is that the district court got it correct. On the issue of assignment, the district court got that piece correct. So we have no issue there. And then I wanted to respond. I see I'm out of town. But if I can respond to another question of Judge Malloy's and then I wanted to have some closing argument, if I may. You've no. What are you. I see that I'm out of time. I just wanted to. I'll give you one minute for closing. You made some relation. You want to answer two or three questions and then do the closing? No. I understood, Your Honor. I'll be brief. Just with respect to Judge Malloy, your question about why can't the issue of the second CD be sorted out. Certainly the parties were ordered to a settlement conference by Judge Davis. We were ordered to settle before Judge Schultz. And there was discovery taken, but it was reviewed in camera. So the appellants, Eric and Melanie, never had access to the bank documents. So there's still a question as to whether the CD1 is the same as CD2. Again, there was no benefit of discovery in this case. And then lastly, with the issue of the dismissal with prejudice, just looking at the facts and the statements from appellee's counsel stating that my client Eric made a comment, appellee counsel said that that never happened, that very back and forth with your honors shows that dismissal with prejudice is a harsh sanction here. The PR also, to suggest that the PR could have brought the very same claims that Eric and Melanie is alleging, is futile. The PR, if you look at the will of David Sorensen, the PR that's named here is Joanne Sorensen herself. To suggest that Joanne would have brought claims against herself would be a conflict of interest. So Eric and Melanie did what they're doing now. They brought their claim. They're trying to have their day in court. And that's all that we're asking for. We ask that you reverse the district court and remand for full proceedings, including trial on the merits. Thank you. Thank you, counsel. That's a complex case with a lot of history, so if the argument has helped to sort it out, we will take it under advisement. Thank you, your honors. Thank you. Does that complete the morning's arguments? Yes, your honors. Very good. Then the court will be in recess until 9 o'clock tomorrow morning. Thank you.